UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMERICAN CONTRACTORS INDEMNITY,

    Plaintiff,

v.

Case Number 11-10894
Honorable Thomas L. Ludington

QUALITY ASBESTOS et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The case arises out of a surety attempting to recover on general indemnity agreements it executed with the respective construction companies of a father and son. The surety, Plaintiff American Contractors Indemnity, relied on the indemnity agreements in issuing a number of school construction bonds on behalf of Defendant Quality Asbestos & Demolition Services, LLC. Sometime later, several schools made demands on bonds.

Plaintiff paid some of the claims. Others remain pending. Plaintiff then filed suit in this court seeking indemnification for the $188,662.44 in losses already incurred on the bonds, as well as $302,035.17 in collateral security for pending claims. Plaintiff seeks to recover from six parties that executed general indemnity agreements with Plaintiff: Defendants Quality Asbestos & Demolition Services, LLC; Quality Built Pole Buildings, LLC; Quality Asbestos Abatement Services, LLC; TNS Equipment Leasing, Inc.; Thomas L. Vermeesch, in his individual capacity; and Thomas L. Vermeesch, doing business as Vermeesch Construction.

On January 24, 2012, Plaintiff moved for summary judgment on its claims. ECF No. 33. Defendants did not respond. Consequently, Plaintiff is entitled to judgment, as the Sixth Circuit

instructs that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992). Moreover, an independent review demonstrates that Plaintiff is entitled to the relief sought. The undisputed facts demonstrate that Defendants agreed to indemnify Plaintiff for amounts paid on the bond and to deposit collateral security on demand to establish a reserve for pending claims.

Accordingly, the Court will grant Plaintiff's motion.

## I

On November 17, 2008, the parties executed the first general indemnity agreement. It was entered into, the agreement itself explains, "for the purpose of indemnifying Surety [i.e., Plaintiff] in connection with any Bond . . . written on behalf of Quality Asbestos & Demolition Services, LLC, [as] 'Principal.'" Compl. Ex. A, at 1, ECF No. 1-2.

Two gentlemen, a father and son, signed on behalf of Defendants. The son, Thomas Lawrence Vermeesch, signed in his individual capacity and on behalf of three companies: (1) Quality Asbestos & Demolition Services, as the managing member; (2) Quality Built Pole Buildings, as the managing member; and (3) Vermeesch Construction, as the owner. His father, Thomas Francis Vermeesch, signed on behalf of TNS Equipment Leasing, Inc. Each of the signatures was notarized.

In pertinent part, the agreement provides that the signatories agree to indemnify Plaintiff for all demands on the bonds, that Plaintiff has the sole discretion to decide which demands are paid, and that Plaintiff is entitled to demand collateral security if a demand is made. It provides:

> 2. INDEMNITY — In consideration of the execution and delivery by the Surety of a Bond or any Bonds on behalf of the Principal, the Undersigned agree to

indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature together with interest thereon at the maximum rate allowed by law, which arise by reason of, or in consequences of, the execution by the Surety of any Bond on behalf of the Principal and whether or not the Surety shall have paid any sums in partial or complete payment thereof including but not limited to:

2.1 Sums paid including interest thereon at the maximum rate allowed by law, or liabilities incurred in the settlement or the adjustment of any and all claims, demands, damages, costs, losses, suits, proceedings, or judgments;

2.2 Expenses paid or incurred in connection with claims, suits, or judgments under such Bonds . . . .

2.6 Attorney's fees and all legal expenses related to any items herein, including in-house attorney's fees, costs and expenses; investigation, accounting or engineering services;

3. EXERCISE OF RIGHTS — In furtherance of such indemnity:

3.1 Surety shall have the right in its sole and absolute discretion to determine whether any claims under any Bond or Bonds shall be paid, compromised, adjusted, defended, prosecuted or appealed.

3.2 Surety shall have the right to incur expenses in handling a claim as it shall deem necessary, including but not limited to the expenses for investigative, accounting, engineering and legal services. . . .

3.4 In a claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred or expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned. . . .

6. COLLATERAL SECURITY — If a claim is made against Surety, whether disputed or not, or if Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in a sufficient amount to protect Surety with respect to such claim or potential claims and any expenses or attorneys' fees.

Compl. Ex. A, at 1, 3.

On April 16, 2010, the parties executed a second general indemnity agreement. *See* Compl. Ex. B. This agreement identified three principals: (1) Quality Asbestos & Demolition

Services; (2) Quality Built Pole Buildings; and (3) Quality Asbestos Abatement Services, LLC (which was not a party to the 2008 agreement). *Id*. at 1.

Again, the Son signed in his individual capacity. And he signed on behalf of four companies as indemnitors: (1) Quality Asbestos & Demolition Services; (2) Quality Built Pole Buildings; (3) Quality Asbestos Abatement Services; and (4) Vermeesch Construction. Again, the Father did not sign in his individual capacity, but signed on behalf of TNS Equipment Leasing, allegedly.[1] And again, each of the signatures was notarized.

The substantive terms of the April 2010 agreement were the same as the terms of the November 2008 agreement quoted above. *See* Compl. Ex. B.

On February 28, 2011, Plaintiff sent a letter to Defendants demanding indemnification and collateral security. The letter explained:

> [Plaintiff] has paid claims totaling $92,748.07 and has recovered $4,000.00 in contract balances. [Plaintiff] has also incurred costs, expenses, and attorney fees in an amount not less than $40,000.00 as of the date of this letter. As such, as of February 28, 2011, [Plaintiff's] net losses are $132,748.07. Demand is hereby made that you immediately reimburse [Plaintiff] for such losses . . . .
>
> As of February 24, 2011, [Plaintiff] has received claims from subcontractors and suppliers, which are currently pending, totaling in excess of $300,000.00. As such, [Plaintiff] demands that you immediately deposit collateral security with it in the amount not less than $300,000.00.

Compl. Ex. C, at 2, 3.

A week passed. Plaintiff did not receive the funds demanded. Accordingly, it filed suit in this Court against six defendants, (1) Quality Asbestos & Demolition Services; (2) Quality Built Pole Buildings; (3) Quality Asbestos Abatement Services; (4) Vermeesch Construction; (5) the Son, Thomas L. Vermeesch; and (6) TNS Equipment Leasing. The four-count complaint

---

[1] In Thomas Lawrence Vermeesh's deposition, he denies that his father signed the April 2010 agreement, explaining "[I]t's my signature. . . . I signed where [the notary] told me to sign and I never really read through it because we were all in a hurry that day and she just told me to sign here, here and here and I signed it." Vermeesch Dep. 11:10, 11:15–18, Dec. 15, 2011, *attached as* Def.'s Mot. Summ. J. Ex. A., ECF No. 33-2.

asserts claims for contractual indemnification, common law indemnification, specific performance of the collateral security provision, and common law quia timet. On May 5, 2011, Defendants accepted service. ECF No. 3. Twenty-one days passed. Defendants did not answer.

On May 27, Plaintiff requested entry of defaults against Defendants. ECF Nos. 4–9. Four days later, the requests were granted. ECF Nos. 10–15. On June 9, Defendants answered, denying liability. ECF No. 16. They did not, however, move to set aside the defaults. Instead, Defendants filed a third-party complaint against one of their project managers, Rafe St. Peter. After Mr. St. Peter was served and did not timely answer, Defendants' request for default against the gentleman was granted. ECF Nos. 21–22.

On January 24, 2012, Plaintiff moved for summary judgment against Defendants. Local Rule 7.1 provides: "A response to a dispositive motion must be filed within 21 days after service of the motion." E.D. Mich. L.R. 7.1(e)(1)(B). A little less than five months have passed. Defendants have not responded to Plaintiff's motion.

**II**

Summary judgment should be granted if the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all facts and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

**III**

As noted, as the Sixth Circuit cautions against "advocacy for the silent." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 n.7 (6th Cir. 1992). It instructs that it is "utterly

inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id*. at 406. Because Defendants do not oppose the motion, Plaintiff is entitled to judgment.

Moreover, an independent review demonstrates that Plaintiff is entitled to the relief sought. The undisputed facts establish that the parties executed two indemnity agreements, one in November 2008, one in April 2010.

The single question regarding the execution of indemnity agreements concerns the Father's signature in the April 2010 agreement. In answering the complaint, Defendants' asserted that TNS Equipment Leasing was not bound by the April 2010 agreement because "Thomas F. Vermeesh never executed the agreement, nor did he promise to execute the agreement, nor did he receive consideration for the agreement, nor did he authorize anyone else to execute the agreement on his behalf. The purported signature is a forgery." Answer ¶ 12.

Defendants concede, however, that the Father executed the November 2008 indemnity agreement on behalf of TNS Equipment Leasing. *See* Answer ¶ 11. In that agreement, TNS Equipment Leasing agrees to indemnify Plaintiff for " any Bond . . . written on behalf of Quality Asbestos & Demolition Services, LLC, [as] 'Principal.' " Compl. Ex. A, at 1. And Plaintiff's damages arise solely from "having issued bonds on behalf of Quality Asbestos." Yi Aff. ¶ 5, *attached as* Pl.'s Mot. Summ. J. Ex. B. Consequently, all six Defendants are bound under the indemnity agreements.

Indemnity agreements, like contracts generally, are construed and enforced in accordance with their plain and ordinary meaning. *See Mazur v. Young*, 507 F.3d 1013, 1022–23 (6th Cir. 2007) (applying Michigan law to guarantee contract); *Pritts v. J. I. Case Co*., 310 N.W.2d 261,

264 (Mich. Ct. App. 1981) ("An indemnity contract is construed in accordance with the rules for the construction of contracts generally."). As noted, the agreements in this case provide that Defendants agree to indemnify Plaintiff for all demands on the bonds, that Plaintiff has the sole discretion to decide which demands are paid, and that Plaintiff is entitled to demand collateral security if a demand is made.

The undisputed evidence is that Plaintiff has incurred $188,662.44 in losses on bonds issued on behalf of Quality Asbestos, as well as $302,035.17 in pending demands on the bonds. To establish these damages, Plaintiff's Vice President and Bond Claims Director, John Yi, submits an affidavit providing an "itemized statement of the losses, costs, expenses, and attorney fees incurred by [Plaintiff] as a result of having issued bonds on behalf of Quality Asbestos."[2] Yi Aff. ¶ 7. Plaintiff is entitled to this amount from Defendants.

### III

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment (ECF No. 33) is **GRANTED**.

It is further **ORDERED** that counsel for plaintiff submit a proposed judgment to the Court through CM/ECF via the "proposed order" link located under the Utilities section.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: May 11, 2012

---

[2] This itemized statement, executed in January 2012, asserts that Plaintiff has incurred $188,662.44 in actual net losses as a result of issuing bonds on behalf of Defendant. This is $55,914.37 higher than the demand letter sent to Defendants in February 2011 (which asserted Plaintiff had incurred $132,748.0744 in actual net losses at the time). Accounting for the difference, many of the charges listed in the itemized statement postdate February 2011. See Yi Aff. 3–5.

-8-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 11, 2012.

                        s/Tracy A. Jacobs
                        TRACY A. JACOBS